## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **KENNETH BERNARD DAVIS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **NO. 3:25-cv-01428** |
| | ) |
| **HOLCIM BUILDING ENVELOPE,** | ) **JUDGE CAMPBELL** |
| **d/b/a AMRIZE BUILDING ENVELOPE,** | ) |
| **et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth Davis, a Madison, Tennessee resident proceeding pro se, has filed a Complaint for Employment Discrimination (Doc. No. 1 ("the Complaint")) against his former employer, Holcim Building Envelope (d/b/a Amrise Building Envelope), its Human Resources Manager Warren Whitaker, and its Director of Sales Operations Beth Crider. (*Id.* at 2.) Plaintiff claims violations of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (ADEA) of 1967, and the Americans with Disabilities Act (ADA) of 1990 (*id.* at 3), seeking an award of damages. (*Id.* at 5.) He has filed an application for leave to proceed in forma pauperis (IFP). (Doc. No. 2.)

## I. PAUPER STATUS

Plaintiff's IFP application reports monthly expenses that exceed his monthly income from "Social Security and a part time job," while also declaring his need for government assistance to pay his rent and utility bills. (Doc. No. 2 at 5.) It thus appears that Plaintiff cannot pay the $405 civil filing fee "without undue hardship." *Foster v. Cuyahoga Dep't of Health and Human Servs.*,

21 F. App'x 239, 240 (6th Cir. 2001). Accordingly, the IFP application (Doc. No. 2) is **GRANTED**. 28 U.S.C. § 1915(a).

## II. INITIAL REVIEW

### A. Legal Standard

Under the pauper statute, 28 U.S.C. § 1915(e)(2)(B), the Court must conduct an initial review and dismiss the Complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e)."). To avoid dismissal for failure to state a claim, the Complaint must contain sufficient factual allegations to render a right to relief "plausible on its face," *Small v. Brock*, 963 F.3d 539, 540 (6th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010)

At this stage, "the Court assumes the truth of 'well-pleaded factual allegations' and 'reasonable inference[s]' therefrom," *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (quoting *Iqbal*, 556 U.S. at 678–79), but is "not required to accept legal conclusions or unwarranted factual inferences as true." *Inner City Contracting, LLC v. Charter Twp. of Northville, Michigan*, 87 F.4th 743, 749 (6th Cir. 2023) (citation omitted). The Court must afford the pro se Complaint a liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), while viewing it in the light most favorable to Plaintiff. *Inner City*, *supra*.

## B. Analysis

Plaintiff sues his former employer and former managers for workplace discrimination between 2023 and 2025, culminating in his termination on May 16, 2025, which he claims was both discriminatory and retaliatory. (Doc. No. 1 at 4.) Plaintiff alleges that Director of Sales Operations Beth Crider harassed and discriminated against him during that time by holding him responsible for "controllable" failures of the "customer in Utah [to] pick up their orders in a timely manner," even though responsibility for those failures should have been attributed to the sales representative and the customer. (*Id.* at 7.) Crider made a point of bringing Plaintiff's supposed failures to the attention of the entire team during team meetings. (*Id.*) When the Utah region "was taken from [Plaintiff] and given to [his] white female counterpart who had the exact same issues . . . with the account, then the issue was no longer 'controllable,' but . . . was considered 'non-controllable' and the white CSR was not held accountable." (*Id.*) Crider also reassigned two of Plaintiff's accounts, assigned him additional work, and began attributing to him the mistakes and productivity issues of other employees. (*Id.*)

After Plaintiff received permission from another manager to work remotely from his parents' house in Memphis "per [his] doctor's request"—apparently to accommodate a condition that required him to walk with a walker or cane and with leg braces—that accommodation was held against him when his team was restructured in April-May 2024 and four white employees were promoted to team leader positions over Plaintiff, despite Plaintiff's superior experience. (*Id.* at 8.) Shortly thereafter, Plaintiff's new team leader called him and "stated that she wanted no hard feelings because she knew [he] had more seniority and experience," but the decision to exclude him from leadership was due to the fact that he worked remotely. (*Id.*) Plaintiff alleges that all previous team meetings and interactions had been via Zoom, so he suspects that his exclusion was

3

due to his disability *and* because he worked remotely. (*Id.*) Plaintiff had one account taken from him by Crider because of the single instance of travel it required, even though Crider had required him to travel from his home in Memphis to Nashville on at least three occasions despite his inability to drive himself. (*Id.*) Crider later instructed Plaintiff "not to email [his] grievances or issues," but "to be grateful that the company has accommodated [his] disability." (*Id.*)

After two co-workers who were over age 40 were laid off in January 2025, Plaintiff, who was over age 60 and afraid that he would lose his job, moved back to Nashville and returned to the office in March 2025. (*Id.* at 8.) He was denied reimbursement for his relocation expenses, and the reason that Human Resources Manager Warren Whitaker gave for the denial was that his move to Memphis had been "without company permission." (*Id.*) On April 24, 2025, Plaintiff met with Whitaker after contacting the Equal Employment Opportunity Commission (EEOC) to make the appointment. (*Id.* at 7.) Plaintiff advised Whitaker that he felt "discriminated against and harassed" by Crider, and Whitaker promised to investigate but did not ever share results of any investigation. (*Id.*)

On May 10, 2025, after Plaintiff made "a firm statement" expressing his frustration with how his team was interacting with another team, Crider suggested he apologize to the team because a new employee overheard the remark. (*Id.* at 4.) Plaintiff apologized, but he was subsequently fired by Crider and Whitaker on May 16, 2025, for stating his frustrations in what they "called an outburst" and linked to "a final warning from 2019 when [he] had a verbal altercation with another employee"—even though the 2019 final warning "was from when the company was Firestone Building Products and owned by Bridgestone, Americas." (*Id.*)

At this early stage, the above allegations are sufficient to support a reasonable inference that Plaintiff was subjected to a discrete act or series of acts that was hostile or discriminatory,[1] denied a promotion, and ultimately terminated for reasons that included his race, age, and/or disability, or in retaliation for contacting the EEOC. *See Diggs v. Potter*, 700 F. Supp. 2d 20, 39–40 (D.D.C. 2010) ("Under Title VII [and related anti-discrimination statutes], the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, sex, age, or disability. … To prove retaliation under these statutes, the plaintiff generally must establish that he suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim."). On September 11, 2025, the EEOC issued a notice of right to sue, which Plaintiff attached to the Complaint. (Doc. No. 1 at 11–15.)

Plaintiff's race, age, and disability discrimination claims will be allowed to proceed against his former employer, Holcim Building Envelope (d/b/a Amrise Building Envelope). However, Defendants Crider and Whitaker will be dismissed from the case under the well-established rule that "an individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII," *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997), or under the ADEA or ADA. *Id.* at 404 n.6.

---

[1]     "[T]o challenge a discrete act in a disparate-treatment claim, the statute requires only that a plaintiff show 'some harm respecting an identifiable term or condition of employment.'" *McNeal v. City of Blue Ash, Ohio*, 117 F.4th 887, 900 (6th Cir. 2024) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–55 (2024)).

5

# III. CONCLUSION

As explained above, Plaintiff's case is sufficiently pled to survive initial review as against his employer,[2] but not as against the individual defendants. Defendants Crider and Whitaker are **DISMISSED** from this action.

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for the remaining defendant. Plaintiff **MUST** complete the service packet and return it to the Clerk's Office within **30 DAYS** of the entry of this Order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packet, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on the defendant. Fed. R. Civ. P. 4(b) and (c)(3).

This action is **REFERRED** to the Magistrate Judge to oversee service of process, to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Plaintiff is cautioned that he must keep the Court informed of his current address at all times, or risk dismissal of this action for failure to prosecute. *See* Fed. R. Civ. P. 41(b); Local Rule 41.01(b). Additional resources for pro se litigants, including forms, handbooks, and information sheets, are available on the court's website. *See* https://www.tnmd.uscourts.gov/representing-yourself-federal-court.

---

[2]     The Court's determination that the Complaint states colorable claims for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

6

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE